Andy Winchell (SBN 185252)
andy@winchlaw.com
Law Offices of Andy Winchell, P.C.
45 River Road, Suite 3
Summit, New Jersey 07901
Telephone No. (973) 457-4710

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carol A. Fiorilli, Joseph Fiorilli )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Wells Fargo Bank, N.A., )<br>)<br>Defendant )<br>) | Case No.: 14-cv-00557<br><br>AMENDED COMPLAINT FOR VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT |

## Introduction

### PRELIMINARY STATEMENT

1. This is an action brought by the Plaintiff Carol A. Fiorilli and Joseph Fiorilli (hereinafter the "Plaintiff") seeking redress for the Defendant's unlawful debt collection activities.

2. The Plaintiff seeks damages from the Defendant's violations of the Fair Debt Collection Practices Act.

1

## JURISDICTION

3. The Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1640(e) because the Plaintiff's claims also arise out of the Fair Debt Collection Practices Act, a federal statute.

## PARTIES

4. The Plaintiff is a married couple who are consumer homeowners living in Far Hills, Somerset County, New Jersey.

5. The Defendant is a corporation with headquarters in San Francisco, California.

## FACTUAL ALLEGATIONS

6. On or about May 31, 2007, the Plaintiff refinanced their home and executed a note (the "Note") in favor of World Savings Bank, FSB ("World Savings Bank").

7. The Note was secured by a mortgage (the "Mortgage," and collectively with the Note, the "Mortgage Loan") on the Plaintiff's home in Far Hills, New Jersey (the "Home").

8. On or about February 21, 2008, World Savings Bank sold the Mortgage Loan to a Real Estate Mortgage Investment Conduit, a securitized trust for which Bank of New York served as the trustee (the "Bank of New York REMIC").

9. World Savings Bank retained no rights with respect to the Mortgage Loan upon the sale thereof to the REMIC.

10. Stated differently, the sale of the Mortgage Loan to the REMIC divested World Savings Bank of all rights thereto.

11. The Note was an "Option ARM," or "Pick-A-Payment" obligation.

12. An Option ARM is a confusing type of loan that is prone to negatively amortizing amounts owed.

13. On or about August 30, 2007, Dolores Mandrigues (the "Class Action Plaintiff") filed a class action lawsuit, Case No. 07-04497, on behalf of herself and all

others similarly situated (the "Class"), which alleged that the Option ARM loan that she entered into violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq. The Class Action Plaintiff alleged, inter alia, that World Savings Bank failed to make adequate disclosures of various terms of the Option ARM.

14. The Plaintiff is a member of the Class.

15. In 2008, the Defendant acquired the successor to World Savings Bank as a subsidiary.

16. On or about December 10, 2010 the parties to the Class Action entered into the Settlement Agreement, a copy of which is attached hereto as Exhibit A.

17. In Section VI.E of the Settlement Agreement, the Defendant agreed to specific accommodations with respect to members of the Class to facilitate their entry into loan modification agreements with the Defendant.

18. These accommodations included the following:

19. All members of the Class who default of become in danger of an imminent default "shall be considered for a HAMP Modification" and/or if such members do not qualify for a HAMP modification "shall be considered for a MAP2R Modification" as described in Section VI.E of the Settlement Agreement, which required the Defendant to apply a financial waterfall to each application before determining whether the borrowers qualified for a loan modification.

20. The Defendant agreed to maintain a "dedicated, adequately staffed help line" to help Class members with applying for modifications.

21. The Defendant agreed to assign a "primary point of contact" to assist Class members seeking a modification

22. The Defendant agreed to notify Class members within ten business days of submission of loan modification applications.

23. The Defendant agreed to provide all Class members who do not qualify for a HAMP modification with a written explanation thereof within thirty days of receiving an application.

24. Finally, the Defendant agreed to "[e]stablish a formal second-look and escalation protocol" for Class members seeking a loan modification.

25. The Plaintiff suffered some financial hardships and ceased being able to pay the Mortgage Loan in 2011.

26. On or about May 1, 2011, the Plaintiff fell behind in making payments on the Note.

27. As a result of the Plaintiff's failure to make such payments, the Note became in default.

28. On or about August 3, 2011, the Defendant purchased the Mortgage Loan and/or its servicing rights from the Bank of New York REMIC.

29. At the time that the Defendant purchased the Mortgage Loan and/or its servicing rights from the Bank of New York REMIC, the Mortgage Loan was in default.

30. The Defendant uses instrumentalities of interstate commerce and the mails regularly to collect debts owed to other entities.

31. The Court entered a final order approving the Settlement Agreement on or about May 17, 2011.

32. As with respect to other members of the Class, the Defendant failed to fulfill some or all of its modification and servicing obligations described in the above paragraphs with respect to the Plaintiff and their loan modification application.

33. Over the course of the next few years, the Plaintiff attempted to obtain a loan modification from the Defendant in order to save the Home.

34. The Plaintiff had dozens of telephone conversations with the Defendant's representatives.

35. On at least one occasion following February 6, 2013, the Defendant's telephone representative failed to disclose that the Defendant was a debt collector.

36. The Plaintiff submitted multiple loan modification applications to the Defendant, each of which contained extensive personal and confidential information about the Plaintiff.

37. The Defendant's help line was not staffed adequately.

38. The Plaintiff was not always assigned a primary point of contact.

39. The Plaintiff did not receive written notifications as provided above.

40. Instead, the Defendant continued to try to attempt to collect the Mortgage Loan from the Plaintiff.

41. In the process of attempting to collect the Mortgage Loan from the Plaintiff, the Defendant made false, deceptive and/or misleading statements in an attempt to convince the Plaintiff to provide information to the Defendant and to pay money to the Defendant.

42. During telephone discussions with the Plaintiff after February 6, 2013, the Defendant made numerous false, deceptive and/or misleading statements.

43. During telephone discussions with the Plaintiff after February 6, 2013, the Defendant used unfair and/or unconscionable means in the process of debt collection.

44. The Defendant's representatives indicated to the Plaintiff that the Defendant would reduce principal obligations for the Mortgage Loan, permit a forbearance of the Mortgage Loan, or extend the Mortgage Loan terms to assist the Plaintiff in saving the Home.

45. On at least one occasion in the spring of 2013, one of the Defendant's representatives stated that the Plaintiff qualified for a loan modification.

46. On at least one occasion in the spring of 2013, one of the Defendant's representatives stated that the Plaintiff's financial condition was appropriate for the Defendant to provide the Plaintiff with a loan modification.

47. Such statements were designed in part to encourage the Plaintiff to continue to provide confidential, personal information to the Defendant.

48. Shortly thereafter, the Defendant's representative conditioned the Plaintiff's learning the terms of a possible loan modification upon the Plaintiff making a payment of approximately $20,000 to the Defendant.

49. Ultimately, in July 2013, the Plaintiff was denied a loan modification. The Defendant later indicated that the Plaintiff did not qualify for a loan modification but gave no indication that the Defendant had applied the financial waterfall as required by the Settlement Agreement before making such a determination.

50. The Defendant continued to attempt to collect the Mortgage Loan.

51. The Defendant then filed a foreclosure action in the New Jersey Superior Court for Somerset County to foreclose on the Plaintiff's home.

52. New Jersey law provides for deficiency judgments following foreclosures.

**FIRST CLAIM FOR RELIEF**
**(Violation of the Fair Debt Collection Practices Act)**

53. The allegations in preceding paragraphs of this complaint are realleged and incorporated herein by this reference.

54. The Plaintiff is a consumer for the purposes of the FDCPA.

55. The Defendant is a "debt collector" for the purposes of the FDCPA.

56. The Defendant is not the original creditor with respect to the Mortgage Loan.

57. The Defendant acquired its rights to the Mortgage Loan after it was in default.

58. The FDCPA prohibits any "false, deceptive, or misleading" action in connection with debt collection. 15 U.S.C. § 1692e.

59. The Defendant violated 15 U.S.C. § 1692e by making false, deceptive or misleading statements.

60. These statements include indicating that the principal reduction, forbearance, and loan term extension would be available to the Plaintiff.

61. These statements include indicating that the Plaintiff qualified for a loan modification.

62. These statements include indicating that the Plaintiff's financial condition was appropriate to receive a loan modification.

63. These statements include indicating that the Plaintiff needed to pay $20,000 to receive a loan modification offer.

64. As a result of the Defendant's violations of the FDCPA, the Plaintiff has incurred actual damages and attorney's fees.

65. The Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 per violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

## SECOND CLAIM FOR RELIEF
### (Violation of the Fair Debt Collection Practices Act)

66. The allegations in preceding paragraphs of this complaint are realleged and incorporated herein by this reference.

67. The Plaintiff is a consumer for the purposes of the FDCPA.

68. The Defendant is a "debt collector" for the purposes of the FDCPA.

69. The Defendant is not the original creditor with respect to the Mortgage Loan.

70. The Defendant acquired its rights to the Mortgage Loan after it was in default.

71. The FDCPA prohibits any unfair or unconscionable means in connection with debt collection. 15 U.S.C. § 1692f.

72. The Defendant violated 15 U.S.C. § 1692f by using unfair and/or unconscionable means in connection with debt collection.

73. Such unfair and/or unconscionable means includes indicating that the Plaintiff qualified for a loan modification.

74. Such unfair and/or unconscionable means includes indicating that the Plaintiff's financial condition was appropriate for a loan modification.

75. Such unfair and/or unconscionable means includes conditioning divulging the terms of a possible loan modification to save the Plaintiff's Home on the Plaintiff's making a payment of approximately $20,000.

76. Such unfair and/or unconscionable means includes failing to provide the Plaintiff with all of the accommodations promised by the Settlement Agreement.

77. As a result of the Defendant's violations of the FDCPA, the Plaintiff has incurred actual damages and attorney's fees.

78. The Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 per violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

## THIRD CLAIM FOR RELIEF
### (Violation of the Fair Debt Collection Practices Act)

79. The allegations in preceding paragraphs of this complaint are realleged and incorporated herein by this reference.

80. The Plaintiff is a consumer for the purposes of the FDCPA.

81. The Defendant is a "debt collector" for the purposes of the FDCPA.

82. The Defendant is not the original creditor with respect to the Mortgage Loan.

83. The Defendant acquired its rights to the Mortgage Loan after it was in default.

84. The FDCPA prohibits any false representation or deceptive means to obtain information about a consumer. 15 U.S.C. § 1692e(10).

85. The Defendant violated 15 U.S.C. § 1692e(10) by using unfair and/or unconscionable means to obtain information about the Plaintiff.

86. Such false representation or deceptive means includes indicating that the Plaintiff might qualify for a loan modification that would reduce principal obligations for the Mortgage Loan, permit a forbearance of the Mortgage Loan, and/or extend the Mortgage Loan terms.

87. Such false representation or deceptive means includes indicating that the Plaintiff's financial condition was appropriate for a loan modification.

88. Such false representation or deceptive means includes inquiring whether the Plaintiff might be able to pay $20,000 in conjunction with a possible loan modification.

89. As a result of the Defendant's violations of the FDCPA, the Plaintiff has incurred actual damages and attorney's fees.

90. The Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 per violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

## FOURTH CLAIM FOR RELIEF
### (Violation of the Fair Debt Collection Practices Act)

91. The allegations in preceding paragraphs of this complaint are realleged and incorporated herein by this reference.

92. The Plaintiff is a consumer for the purposes of the FDCPA.

93. The Defendant is a "debt collector" for the purposes of the FDCPA.

94. The Defendant is not the original creditor with respect to the Mortgage Loan.

95. The Defendant acquired its rights to the Mortgage Loan after it was in default.

96. The FDCPA requires debt collectors in each communication with a consumer to identify themselves as debt collectors. 15 U.S.C. § 1692e(11).

97. The Defendant violated 15 U.S.C. § 1692 e(11) by failing on at least one occasion to identify itself as a debt collector in telephone communications with the Plaintiff.

98. As a result of the Defendant's violations of the FDCPA, the Plaintiff has incurred actual damages and attorney's fees.

99. The Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 per violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

**WHEREFORE,** the Plaintiff having set forth claims for relief against the Defendant respectfully prays of the Court as follows:

    a. That the Plaintiff be awarded and recover actual, statutory and punitive damages in an amount to be determined by this Court;

    b. That the Plaintiff have and recover reasonable legal fees in an amount to be determined by this Court;

    c. That the Plaintiff recover all reasonable costs and expenses in this case in an amount to be determined by this Court;

   d. That this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of orders entered in this case;

   e. That the Plaintiff have such other and further relief as to the Court may seem just and proper.

Dated this the 13th day of August, 2014.

/s/ Andy Winchell
Andy Winchell (SBN 185252)
Law Offices of Andy Winchell, P.C.
45 River Road, Suite 3
Summit, New Jersey 07901
973-457-4710
andy@winchlaw.com
Attorney for the Plaintiff

Plaintiff requests trial by jury on all issues so triable.

/s/ Andy Winchell
Andy Winchell