IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION | Case No. M:09-CV-2015-JF <br><br> AGREEMENT AND STIPULATION OF SETTLEMENT OF CLASS ACTION |

This Agreement and Stipulation of Class Action Settlement ("Agreement") is entered into by and among plaintiffs Dolores Mandrigues, Juanita Jones, Al F. Minyen, Wilma R. Minyen, Mark Clauson, Christina Clauson, Bonnie Mincey, Stephanie O'Rourke, Tina Singer, Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, Clara C. Rotruck, Judith M. Holley, Roland Harris, Gloria Harris, Emogen White, Vanessa L. McLeaurin, by Travis A. Budd, personal representative, James W. Collins, Jr., Michael Brunkhorst, Jayme Brunkhorst, Michael T. Harber, Mary Harber, Mark Chaney, Gloria Chaney, and Terry L. Costello (the "Class Representatives"), on behalf of themselves and as representatives of the Settlement Class described herein, and defendants World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A. (the "Defendants"). The Class Representatives and the Defendants are collectively referred to herein as "the Parties."

This Agreement is made for the sole purpose of attempting to consummate settlement of this action on a class-wide basis. As detailed below, in the event that the Court does not execute and file an Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become final for any reason, this Agreement shall be deemed null and void

and shall be of no effect or force whatsoever. The Parties agree to cooperate fully with each other to accomplish the terms of this Agreement, including but not limited to execution of such documents and taking such other action as may be reasonably necessary to implement the terms of this Agreement.

## FACTUAL BACKGROUND AND RECITALS

1.     Prior to commencing any actions against Defendants, Plaintiffs' (as defined in Section 1.54 hereafter) counsel conducted a thorough investigation of the underlying facts and claims in this action, including the review of over five hundred (500) sets of loan documents from individuals who had received Pick-a-Payment mortgage loans from World Savings Bank, FSB.

2.     On August 30, 2007, Dolores Mandrigues filed a Complaint in the Court (as defined in Section 1.15 hereafter) captioned *Dolores Mandrigues, individually and on behalf of all others similarly situated v. World Savings, Inc., World Savings Bank, FSB, Wachovia Mortgage Corporation, and Does 1 through 10 inclusive*, N.D. Cal., Case No. 5:07-cv-4497 ("*Mandrigues*"). The Complaint alleged causes of action for violations of the federal Truth-in-Lending Act ("TILA"), violations of California's Unfair Competition Law, breach of contract, and breach of the implied covenant of good faith and fair dealing. The *Mandrigues* action was assigned to the Honorable Jeremy Fogel. On October 11, 2007, Dolores Mandrigues filed a First Amended Complaint in *Mandrigues*, and, on December 14, 2007, during the initial case management conference, Dolores Mandrigues, through counsel, orally moved the Court for leave to file a Second Amended Complaint, which was granted. On December 31, 2007, Dolores Mandrigues filed a Second Amended Complaint and a Corrected Second Amended Complaint in *Mandrigues*, naming Juanita Jones, Al F. Minyen, Wilma R. Minyen, Mark Clauson, and Christina Clauson as additional plaintiffs and putative class representatives. The operative

pleading in *Mandrigues* is the Corrected Second Amended Complaint. The Corrected Second Amended Complaint added, among other things, a cause of action for fraud.

In January 2008, Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation filed a motion to dismiss *Mandrigues*, which asserted that the relevant loan documents complied with TILA and that the state law causes of action were preempted by the Home Owners Loan Act ("HOLA"). The *Mandrigues* plaintiffs opposed the motion. In April 2008, the Court denied the motion to dismiss.

During 2008, the *Mandrigues* plaintiffs served multiple sets of interrogatories and requests for production of documents on Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation. Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation also served discovery requests on each of the putative class representatives and took their depositions. Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation also took the depositions of some third-party brokers who brokered the subject loan transactions. Production by Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation included over fifteen thousand (15,000) pages of documents and approximately twenty (20) hours of video and audio materials, all of which was reviewed by Plaintiffs' counsel.

As explained in Paragraph 3 below, also during 2008, other borrowers filed additional lawsuits against the Defendants, which generally asserted the same claims and allegations as alleged by the *Mandrigues* plaintiffs. As explained in Paragraph 4 below, in November 2008, a petition to coordinate those actions was filed with the Judicial Panel on Multidistrict Litigation (the "MDL Panel") and those actions subsequently were coordinated and transferred to the Court.

In November 2008, the *Mandrigues* plaintiffs filed a motion for class certification and a motion for preliminary injunction to prohibit Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation from foreclosing on the homes of any putative class members. In January 2009, the Court stayed the class certification motion and all other litigation pending a decision from the MDL Panel. It did, however, hold a hearing on the preliminary injunction motion, which it subsequently denied.

3.     During 2008 and continuing through 2010, other putative class actions and single-plaintiff actions were filed against the Defendants alleging claims substantially similar to those alleged against the Defendants in *Mandrigues*, including:

a.     *Bonnie Mincey, Stephanie O'Rourke, and Tina Singer, individually and on behalf of all others similar situated v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation,* D.S.C., Case No. 2:07-cv-3762 ("*Mincey*"): The *Mincey* Complaint was filed on November 16, 2007 and an Amended Complaint, adding additional plaintiffs, was filed on January 18, 2008. On February 21, 2008, Defendants Golden West Financial Corporation and Wachovia Corporation filed their motion to dismiss, and Defendant World Savings Bank, FSB filed its answer as well as a motion for judgment on the pleadings. On April 4, 2008, the *Mincey* plaintiffs filed a response to Golden West Financial Corporation and Wachovia Corporation's motion to dismiss, and a cross-motion for judgment on the pleadings as to the claims alleged against Defendant World Savings Bank, FSB. On August 15, 2008, the *Mincey* court issued an order granting Golden West Financial Corporation and Wachovia Corporation's motion to dismiss, and granting in part and denying in part the motions for judgment on the pleadings (the "August 15, 2008 Order").

Defendant World Savings Bank, FSB filed a motion for reconsideration of the August 15, 2008 Order, to which the *Mincey* plaintiffs responded. After receiving information that the Defendants and/or their agents were contacting Pick-a-Payment mortgage loan borrowers to refinance or modify their loans, the *Mincey* plaintiffs filed a Motion to Require Defendants to Provide Refinancing Documents and Information under Rule 23(d), seeking information regarding contacts with putative class members and the modification programs initiated by the Defendants. The *Mincey* court did not rule on World Savings Bank, FSB's motion for reconsideration or the *Mincey* plaintiffs' Motion to Require Defendants to Provide Refinancing Documents and Information before the MDL Panel issued its order coordinating the actions.

        b.    *Laura Johnson v. Wachovia Mortgage Corporation, Equity Source Home Loans LLC, Don Haupt, and John Does #1 - #10*, D.N.J., Case No. 2:08-cv-04147 ("*Johnson*"). The *Johnson* Complaint was filed on July 3, 2008 and an Amended Complaint adding class allegations was filed on February 13, 2009.

        c.    *Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, and Clara C. Rotruck, individually and on behalf of others similarly situated v. World Savings Bank, FSB, now known as Wachovia Mortgage, FSB, Golden West Financial Corporation, and Wachovia Corporation*, N.D. Fla., Case No. 4:08-cv-380 ("*Whatley*"). The *Whatley* Complaint was filed on August 25, 2008. The First Amended Complaint, which added additional plaintiffs, was filed on September 11, 2008. Defendants World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation filed their motions to dismiss on October 22, 2008. The *Whatley* plaintiffs' responses in opposition to the motions to dismiss were filed on November 10, 2008. Pursuant to the *Whatley* court's

local rule requiring the filing of a motion for class certification within 90 days of the filing of a putative class action complaint, the *Whatley* plaintiffs filed their motion for class certification and supporting materials on November 24, 2008. The *Whatley* action was subsequently stayed pending resolution of the MDL petition.

      d.    *Judith M. Holley, Roland Harris, Gloria Harris, Emogen White, Vanessa L. McLeaurin, and James W. Collins, Jr., individually and on behalf of others similarly situated v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation,* D. Md., Case No. 1:08-cv-02307 ("*Holley*"). The *Holley* Complaint was filed on September 4, 2008. Defendants World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation filed their motions to dismiss on October 20, 2008. The *Holley* plaintiffs' responses in opposition to the motions to dismiss were filed on November 12, 2008. Defendants World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation filed their replies in support of their motions to dismiss on December 4, 2008. Subsequently, *Holley* was stayed pending resolution of the MDL petition.

      e.    *Michael Brunkhorst and Jayme Brunkhorst v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation,* S.D. Ill., Case No. 3:09-cv-00127 ("*Brunkhorst*"). The *Brunkhorst* Complaint was filed on February 17, 2009. On April 28, 2009, Defendant World Savings Bank, FSB filed its answer to the *Brunkhorst* Complaint, and Defendants Golden West Financial Corporation and Wachovia Corporation filed their motion to dismiss.

      f.    *Michael T. Harber and Mary Harber v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation,* E.D. Mo., Case No. 4:09-cv-

00258 ("*Harber*").  The *Harber* Complaint was filed on February 17, 2009.  On April 28, 2009, Defendant World Savings Bank, FSB filed its answer to the *Harber* Complaint, and Defendants Golden West Financial Corporation and Wachovia Corporation filed their motion to dismiss.

      g.    *Mark Chaney, Gloria Chaney, and Terry L. Costello v. Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB; Wachovia Bank, FSB, f/k/a World Savings Bank, FSB-TX; and Golden West Financial Corporation*, D. Ariz., Case No. 2:10-cv-01001-MHB ("*Chaney*").  The *Chaney* Complaint was filed on May 5, 2010.  On August 23, 2010, Defendants Wachovia Mortgage, FSB, Wachovia Bank, FSB, and Golden West Financial Corporation filed their motion to dismiss.  The *Chaney* plaintiffs and Defendants Wachovia Mortgage, FSB, Wachovia Bank, FSB, and Golden West Financial Corporation subsequently agreed to stay further briefing on the motion to dismiss pending continued settlement negotiations.

      h.    *Joseph Henning v. Wachovia Mortgage Corporation and Wachovia Mortgage, FSB*, D. Mass, Case No. 1:09-cv-11053-MLW ("*Henning*").  The *Henning* Complaint was filed on May 4, 2009, and on October 20, 2009, Defendant Wachovia Mortgage Corporation filed a motion for summary judgment.

      i.    *Bernardino Bettinelli and Carol G. Bettinelli v. Wells Fargo Home Mortgage, Inc.*, D. Mass., Case No. 1:09-cv-11079-MLW ("*Bettinelli*").  The *Bettinelli* Complaint was filed on June 23, 2009 and an Amended Complaint was filed on June 24, 2009.  On October 28, 2009, Defendant Wells Fargo Home Mortgage filed its motion to dismiss, and the *Bettinelli* plaintiffs filed their opposition to the motion to dismiss on November 24, 2009.  Defendant Wells Fargo Home Mortgage filed its reply in support of

its motion to dismiss on December 31, 2009.

     j.    *Fattu Salia v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation,* D. Md., Civil Action No. DKC-2010-1553 ("*Salia*"). The *Salia* Complaint was filed on June 11, 2010. On July 2, 2010, Defendants World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation filed their motions to dismiss.

    4.    In November 2008, the *Mincey* plaintiffs filed with the MDL Panel a motion to centralize the *Mandrigues, Mincey, Holley,* and *Whatley* actions for coordinated or consolidated pretrial proceedings. On February 13, 2009, the MDL Panel transferred *Mincey, Holley,* and *Whatley* to the Court and consolidated those actions with *Mandrigues* as *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation,* Case No. M:09-CV-2015-JF. The MDL Panel subsequently transferred *Brunkhorst, Harber, Johnson, Chaney, Henning, Bettinelli,* and *Salia* to the Court, and also consolidated those actions with *Mandrigues.* The *Mandrigues, Mincey, Johnson, Whatley, Holley, Brunkhorst, Harber, Chaney, Henning, Bettinelli,* and *Salia* actions now are collectively referred to as the *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation,* Case No. M:09-CV-2015-JF (the "Lawsuit").

    5.    In August 2009, Plaintiffs requested that the Court dissolve the January 2009 stay entered in *Mandrigues.* At the same time, the Defendants requested that Plaintiffs file a consolidated complaint for all of the coordinated actions in the Lawsuit, while Plaintiffs requested that the Court conduct a hearing concerning the pending class certification motion in *Mandrigues,* which had been fully briefed since late 2008. The Court agreed to allow a class certification motion on the TILA claims in *Mandrigues* to proceed, along with summary

judgment motions from both sides on the TILA claims in *Mandrigues*.

6.     In December 2009, Plaintiffs filed motions for summary judgment and class certification concerning the TILA claims in *Mandrigues*, while Defendants filed their own summary judgment motion concerning those claims.  In January 2010, both sides filed their opposition and reply briefs.

7.     Since March 2009, the Parties have engaged in extensive settlement negotiations. At all times, the Parties' negotiations were adversarial, non-collusive, and at arms' length.  As explained in Paragraphs 1 through 6 above, prior to and during these negotiations, the Parties engaged in vigorous, and often contentious, litigation in many of the actions that comprise the Lawsuit.

8.     In February 2010, the Parties commenced mediation with Retired Justice John Trotter.  Thereafter, as progress in the negotiations was being made, the Court agreed, on multiple occasions, to continue the hearing on the pending motions in *Mandrigues*.  Ultimately, an agreement in principal was reached with Justice Trotter's assistance.

## GENERAL STATEMENTS

9.     The Class Representatives and Class Counsel (as defined in Sections 1.12 and 1.10 hereafter) believe that the claims asserted in the Lawsuit have merit.  The Class Representatives and Class Counsel, however, recognize and acknowledge the uncertainty and risks inherent in litigation, along with the significant expense and length of continued proceedings necessary to prosecute the litigation against the Defendants through trial and possible appeal.  The Class Representatives and Class Counsel also are mindful of the potential problems of proof and possible defenses to the Alleged Claims (as defined in Section 1.6 hereafter).  After careful consideration and after participating in seven (7) full-day mediation sessions over the past twenty-

one (21) months, the Class Representatives and Class Counsel have concluded that it is desirable that this class action lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement. Both the Class Representatives and Class Counsel believe that the settlement set forth in this Agreement is fair, reasonable, and adequate and confers substantial benefits upon the Settlement Class (as defined in 1.66 hereafter) and each of the Settlement Class Members (as defined in Section 1.67 hereafter).

10.     The Parties are sufficiently familiar with the facts of the Lawsuit and the applicable law so as to warrant settlement at this time. The Parties have engaged in extensive discovery in order to evaluate the relative strength of the Parties' claims and defenses, including written discovery, document production, and depositions. As discussed above, the Parties also have conducted significant briefing in connection with the motions in this case, including the briefing of dispositive motions in multiple cases and a motion for class certification in *Mandrigues*. The Parties have mediated the case with two different mediators on multiple occasions. In connection with each mediation session, the Parties exchanged information, data, and documents necessary to fully and fairly evaluate the claims of existing and putative class members.

11.     The Parties are represented by competent counsel experienced in class action litigation and have had the opportunity to consult with counsel prior to the submission of this Agreement to the Court.

12.     Nothing in this Agreement, or the fact of this Agreement itself, shall be construed or deemed an admission of liability, culpability, negligence, or wrongdoing of any kind on the part of the Defendants with respect to the Alleged Claims. The Defendants deny all the claims and contentions alleged by the Class Representatives in the Lawsuit. Nonetheless, the Defendants have

concluded that further litigation would be protracted and expensive, and would also divert management and employee time. The Defendants have taken into account the uncertainty and risks inherent in litigation, especially in multi-party cases. The Defendants therefore have concluded that it is desirable that the Lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement.

      13.    Pursuant to Federal Rule of Evidence 408 and California Evidence Code Sections 1119 and 1152, this Agreement and any related documents filed or created in connection with it shall be inadmissible as evidence in any proceeding, except as necessary to approve, interpret, or enforce this Agreement.

<u>TERMS OF SETTLEMENT</u>

      NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the Class Representatives, for themselves and the Settlement Class (as defined in Section 1.66 hereafter), and the Defendants that, subject to the terms and conditions precedent set forth below, the Lawsuit and the Alleged Claims (as defined in Section 1.6 hereafter) shall be finally and fully compromised, released, resolved, relinquished, discharged, and settled; and the Lawsuit shall be dismissed in accordance with Sections XIV and XV of this Agreement, without any adverse findings or conclusions against the Defendants or anyone else, upon and subject to the terms and conditions of this Agreement, as follows:

I.    **DEFINITIONS**

    As used in this Agreement, the following terms shall have the meanings specified below:

    1.1.   *Usage.*   The following rules apply to the construction of this Agreement:

        1.1.1.  The singular includes the plural and the plural includes the singular;

        1.1.2.  "Include" and "including" are not limiting;

1.1.3. The headings of the Sections and Subsections are for convenience only and shall not constitute a part of this Agreement, and shall not affect the meaning, construction, or effect of the applicable provisions of this Agreement;

1.1.4. Words such as "hereunder," "hereto," "hereof," and "herein," and other words of like import shall, unless the context clearly indicates to the contrary, refer to the whole of this Agreement and not to any particular Section, subsection, or clause hereof.

1.2. *"Accrued Interest"* means scheduled periodic interest owed in accordance with the applicable mortgage note.

1.3. *"Additional Defendants"* means Wells Fargo & Company, John Stumpf, and Marc C. Oman, who are named defendants in the action entitled *Charles and Jerri H. Holmes and John D. Moller v. Wells Fargo and Company, Wachovia Mortgage Corporation, World Savings, Inc., John Stumpf, and Marc C. Oman*, N.D. Cal., Case No. 5:10-cv-02406-JF, and who will be named as Released Entities in the Judgment.

1.4. *"Administration Expenses"* means the expenses incurred by the Settlement Administrator in handling the administration of the settlement, including, but not limited to, expenses related to the processing of the Claim Forms submitted by Settlement Class A Members pursuant to this Agreement and Notice Expenses.

1.5. *"Agreement"* means this Agreement and Stipulation of Class Action Settlement.

1.6. *"Alleged Claims"* means the claims that are alleged in the Lawsuit and the Related Actions, including, but not limited to, claims that the Defendants and the

Additional Defendants violated TILA, state unfair competition laws, state unfair and deceptive trade practices statutes, and state consumer protection laws; breached the terms of the Parties' contracts; engaged in fraudulent misrepresentations or omissions; and breached the implied duty of good faith and fair dealing in connection with the Plaintiffs' Pick-a-Payment mortgage loans by failing to adequately disclose the loans' potential for negative amortization, providing Borrowers with inaccurate payment schedules, failing to disclose the interest rates on which those payment schedules were based, and failing to disclose the terms of the Parties' legal obligations, entitling them to damages, statutory penalties, restitution, punitive damages, interest, attorneys' fees, costs, injunctive relief, and other legal or equitable relief under state and federal law.

1.7.    *"Borrower"* means the obligor(s) on a Pick-a-Payment mortgage loan note and the title holder(s) who signed the security instrument subjecting certain real estate property as collateral for such note.

1.8.    *"Claim Form"* means the paper and electronic claim forms referenced in Section VIII(B) of this Agreement and approved by the Court. The Claim Form will require the Settlement Class A Member to provide basic information, including the address of the property that secured his or her Pick-a-Payment mortgage loan. The Claim Form will not require notarization, but will require that the information supplied be attested to as true according to the Settlement Class A Member's best knowledge and belief.

1.9.    *"Claims Deadline"* means the date by which all Claim Forms must be postmarked or submitted online to be considered timely and shall be no earlier than ninety (90) calendar days after the Date of Preliminary Approval (as defined in Section 1.17

hereafter).  The Claims Deadline shall be clearly set forth in the Settlement Notices, in the Claim Form, on the Settlement website, and in the Court's order granting Preliminary Approval of the Agreement.

1.10.   *"Class Counsel"* means Lead Class Counsel and the attorneys comprising the Executive Steering Committee.

1.11.   *"Class Period"* means August 1, 2003 through and including December 31, 2008.

1.12.   *"Class Representatives"* means Dolores Mandrigues, Juanita Jones, Al F. Minyen, Wilma R. Minyen, Mark Clauson, Christina Clauson, Bonnie Mincey, Stephanie O'Rourke, Tina Singer, Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, Clara C. Rotruck, Judith M. Holley, Roland Harris, Gloria Harris, Emogen White, Vanessa L. McLeaurin, by Travis A. Budd, personal representative, James W. Collins, Jr., Michael Brunkhorst, Jayme Brunkhorst, Michael T. Harber, Mary Harber, Mark Chaney, Gloria Chaney, and Terry L. Costello.

1.13.   *"Class Representative Award"* means such funds as may be awarded by the Court to the Class Representatives to compensate them for their efforts in bringing the Lawsuit and achieving the benefits of this Agreement on behalf of the Settlement Class.

1.14.   *"Corporate and Default-Related Advances"* shall mean any default- or foreclosure-related fee or cost assessed to a Borrower's account for expenditures such as attorneys' fees, statutory expenses, foreclosure fees and costs, fees for property valuations, property inspections, property preservation, and protective advances.

1.15.  *"Court"* means the United States District Court for the Northern District of California, the Honorable Jeremy F. Fogel, currently presiding, or any other court that obtains competent jurisdiction of the Lawsuit.

1.16.  *"Date of Final Approval"* means the date the Court enters an order granting final approval of the Settlement.

1.17.  *"Date of Preliminary Approval"* means the date the Court enters an order granting preliminary approval of the Settlement.

1.18.  *"Default"* means that a Borrower's mortgage payment is sixty (60) or more calendar days past due.

1.19.  *"Defendants"* means World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A.

1.20.  *"Defendants' Counsel"* means T. Thomas Cottingham, III of Winston & Strawn LLP and Jack R. Nelson of Reed Smith LLP.

1.21.  *"Deferred Interest"* means the interest charges added to the Borrower's principal balance as a result of the Borrower making a payment that did not include all of the interest that Defendants claimed was owed on the Pick-a-Payment mortgage loan.

1.22.  *"DTP"* or *"Debt-to-Income Ratio"* means the ratio of the Borrower's first-lien monthly mortgage obligations (including monthly amounts for principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees, and

homeowners' association fees, as applicable, regardless of whether any of the foregoing are included in the Borrower's Monthly Payment (defined in Section 1.41 hereafter), and including any escrow payment shortage amounts subject to a repayment plan) to the Borrower's gross monthly income, all determined in accordance with HAMP, as defined in Treasury's Supplemental Directive 9-01: Introduction of the Home Affordable Modification Program, April 6, 2009.

1.23.   *"Effective Date"* means the date, if any, on which the Judgment entered pursuant to this Agreement becomes Final.

1.24.   *"Escrow-related Advances"* means advances for items such as property taxes, hazard insurance, homeowners' association or condominium fees advanced on behalf of the Borrower by World Savings Bank, FSB, now known as Wachovia Mortgage, FSB.

1.25.   *"Executive Steering Committee"* means Gerson Smoger of Smoger & Associates; Mark Cuker of Williams Cuker Berezofsky; Eric George of Browne Woods George, LLP; Christopher Seeger of Seeger Weiss LLP; Brian Kabateck of Kabateck Brown Kellner LLP; A. Hoyt Rowell of Richardson, Patrick, Westbrook & Brickman LLP; and Evan Buxner of The Buxner Law Firm.

1.26.   *"Fairness Hearing"* means the hearing before the Court where the Parties will request that Judgment be entered by the Court approving the Agreement as fair, reasonable, and adequate, approving the Fee Award, and approving the Class Representative Award, which hearing shall occur no earlier than one hundred and thirty (130) calendar days following the Date of Preliminary Approval.

1.27.   "*Fee Award*" means the amount of attorneys' fees and reimbursement of costs awarded by the Court to Class Counsel to compensate Class Counsel for all of the past, present, and future attorneys' fees, costs (including court costs), expenses, and disbursements incurred by them, their experts, staff, and consultants in connection with the Lawsuit and the Related Actions.

1.28.   "*Final*" means that the Judgment has become final, binding, and effective and no longer subject to appellate review, which shall be ten (10) business days following the Court's Final Approval of the Settlement should no Settlement Class Members file Objections to the Settlement; or, if Objections to the Settlement are filed, then no earlier than one (1) business day following the latest of the following events: (a) the date upon which the time expires for filing or noticing any appeal of the Court's Judgment ordering the dismissal with prejudice of the Alleged Claims and approving the Agreement as fair, reasonable, and adequate; (b) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (c) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

1.29.   "*Final Approval*" means final approval of the Settlement by the Court.

1.30. *"Fully Amortizing"* means a Pick-a-Payment mortgage loan in which the Borrower's Monthly Payment covers the interest accrued and due each month, as well as paying a portion of the principal balance such that the balance of the loan should be paid in full at the expiration of the term of the loan if all Monthly Payments are made when due.

1.31. *"Good Standing"* means that a Borrower is not currently and, since the effective date of the Borrower's MAP2R Modification agreement, has not ever been delinquent by the equivalent of three (3) full Monthly Payments at the end of the month in which the last of the three (3) delinquent payments was due.   Once lost, Good Standing cannot be restored even if the Borrower subsequently cures the default.

1.32. *"HAMP"* means the Home Affordable Modification Program administered by the United States Department of the Treasury.

1.33. *"Imminent Default"* describes a Borrower (as defined in Section 1.7) who the Defendants have determined, in accordance with applicable HAMP guidance, as necessary, that default by the Borrower in making scheduled payments on his or her Pick-a-Payment mortgage loan is reasonably foreseeable.   In assessing whether a Borrower is facing Imminent Default, the Defendants will not consider funds held in a 401K, 457, 401(a), or 503 retirement account, an IRA, SEP IRA, Simple IRA, or Roth IRA.   Additionally, the fact that a Borrower is projected to Recast to a fully-amortizing payment under the terms of the Pick-a-Payment mortgage loan within the upcoming four (4) contractual Monthly Payments (as defined in Section 1.41 hereafter) using the current applicable interest rate as determined under the terms of the note, and the resulting increase, if any, to the respective Borrower's DTI (as

defined in Section 1.22), shall be considered as a factor in the determination of Imminent Default.

1.34. *"Judgment"* means the Order to be entered by the Court approving this Agreement, without material modifications that are unacceptable to any of the Parties, as fair, adequate, and reasonable in accordance with applicable jurisprudence, confirming the certification of the Class for settlement purposes, and issuing such other findings and determinations as the Court or the Parties deem necessary and appropriate to effectuate all terms of this Agreement.

1.35. *"Lawsuit"* means the action styled *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation,* Case No. M:09-CV-2015-JF, the Honorable Jeremy F. Fogel presiding.

1.36. *"Lead Class Counsel"* means Jeffrey K. Berns and David M. Arbogast of Arbogast & Berns LLP.

1.37. *"LTV"* means the current ratio of the unpaid principal balance of the Pick-a-Payment mortgage loan, less any amounts of principal forbearance, to the Market Value of the residential property that secures such Pick-a-Payment mortgage loan as of the time reviewed for eligibility for modification.

1.38. *"MAP2R"* shall mean Wells Fargo's Mortgage Assistance Program 2 which is based on the terms described in this Agreement.

1.39. *"Market Rate"* is the Freddie Mac Weekly Primary Mortgage Market Survey ("PMMS") Rate for 30-year fixed-rate conforming loans, rounded to the nearest

0.125 percent, as of the date that the modification or option is prepared, plus one hundred (100) basis points.

1.40. "*Market Value*" shall mean the value of the residential property that secures the Pick-a-Payment mortgage loan as determined by the Defendants in reliance on an appraisal report prepared not more than one hundred eighty (180) calendar days before the date of determination, broker price opinion prepared not more than one hundred twenty (120) calendar days before the date of determination, or automated valuation model prepared not more than ninety (90) calendar days before the date of determination.  Notwithstanding the foregoing, for the purposes of Section VI(E) of this Agreement, the Defendants may rely on the most recent value available in its system of record for determining the value of the residential property.

1.41. "*Monthly Payment*" shall mean the amount that is due from the Borrower on a monthly basis according to the note, and shall include any principal amounts, monthly accrued interest, monthly amounts to apply to escrow for taxes, hazard insurance, and homeowners' association or condominium fees.

1.42. "*Negative Amortization*" shall have the same meaning as Deferred Interest.

1.43. "*Notice Expenses*" means all reasonable costs and expenses expended in the execution of the Notice Plan, including (a) all reasonable costs and expenses incurred in connection with preparing, printing, mailing, disseminating, posting, promoting, emailing, internet hosting, and publishing the Settlement Notices to the Settlement Class of the proposed settlement and identifying and notifying Settlement Class Members of the proposed settlement; (b) all reasonable costs and expenses incurred in connection with operating and maintaining an Interactive Voice Response System or

live response personnel to provide further information and address questions relating to the Settlement Notices; and (c) any other necessary notice or notice-related expenses.

1.44.   *"Notices of Class Action Settlement"* or *"Settlement Notices"* have the meaning set forth in Section X of this Agreement.

1.45.   *"Notice of Intention to Appear and Object"* means the written communication that must be filed with the Court prior to the last day of the Opt-Out Period/Objection Deadline by a Class Member in order to object to the approval of any portion of this Agreement.

1.46.   *"Notice Plan"* means the plan described in Section X(B) of this Agreement for disseminating the Settlement Notices to the Settlement Class Members.

1.47.   *"NPV Test"* means the calculation and comparison of the net present value ("NPV") of conducting a modification of a Pick-a-Payment mortgage loan versus the NPV of not conducting a modification of the same Pick-a-Payment mortgage loan. The NPV formula has been explained to Lead Class Counsel and will be disclosed to the Court, *in camera*, if the Court requests.  If the NPV of the modification would be greater than the NPV if there was no modification, the result is deemed "positive."  If the NPV of the modification would be less than the NPV if there was no modification, the result is deemed "negative."

1.48.   *"Objection"* shall have the same meaning as Notice of Intention to Appear and Object.

1.49.   *"Opt-Out"* means to opt-out of the Settlement Class certified for purposes of this Settlement as provided in Section XII below.

1.50.   *"Opt-Out Period/Objection Deadline"* means the date to be set by the Court in the Lawsuit for a Settlement Class Member to submit a Request for Exclusion or a Notice of Intention to Appear and Object.  The deadline for submitting a Request for Exclusion or a Notice of Intention to Appear and Object will be clearly set forth in the Settlement Notices and shall be no earlier than ninety (90) calendar days after the Date of Preliminary Approval.

1.51.   *"Parties"* means the Class Representatives and the Defendants.

1.52.   *"Person"* means any individual, corporation, trust, partnership, limited liability company, or other legal entity and their respective predecessors, successors, or assigns.

1.53.   *"Pick-a-Payment mortgage loan"* shall mean a Pick-a-Payment mortgage loan originated or acquired by World Savings Bank, FSB or Wachovia Mortgage, FSB that is or was secured by the Borrower's principal residence.  The Pick-a-Payment mortgage loan permitted the Borrower to select and make a minimum payment amount for a limited time and subject to certain conditions.  In particular, for each payment, the Borrower could choose from up to four (4) options:  (1) a fully-amortized 30-year interest and principal payment such that the loan would be satisfied in the traditional 30-year term; (2) a fully-amortized 15-year interest and principal payment such that the loan would be satisfied in a 15-year term; (3) an "interest-only payment"; or (4) a lesser, minimum payment.  When a payment was insufficient to

pay the interest the Defendants claimed was owed, unpaid interest was added to the loan's principal balance and the outstanding principal balance increased.

1.54.   *"Plaintiffs"* means Dolores Mandrigues, Juanita Jones, Al F. Minyen, Wilma R. Minyen, Mark Clauson, Christina Clauson, Bonnie Mincey, Stephanie O'Rourke, Tina Singer, Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, Clara C. Rotruck, Judith M. Holley, Roland Harris, Gloria Harris, Emogen White, Vanessa L. McLeaurin, by Travis A. Budd, personal representative, James W. Collins, Jr., Michael Brunkhorst, Jayme Brunkhorst, Michael T. Harber, Mary Harber, Mark Chaney, Gloria Chaney, and Terry L. Costello, and each of the Settlement Class Members.

1.55.   *"Plan of Allocation"* shall have the meaning set forth in Section VI(A) hereafter.

1.56.   *"Preliminary Approval"* means the Court's conditional certification of the Settlement Class, preliminary approval of this Agreement, as well as approval of the Settlement Administrator and approval of the form and methods of dissemination of the Settlement Notices, the Notice Plan, and the Claim Form.

1.57.   *"Recast"* means a recalculation establishing a new fully-amortizing periodic payment triggered by the unpaid principal balances cap, or date certain, such that the payment increase as a result of such Recast exceeds seven and one-half percent (7.5%).

1.58.   *"Related Actions"* means the following pending actions:

   a.   *Charles and Jerri H. Holmes and John D. Moller v. Wells Fargo and Company, Wachovia Mortgage Corporation, World Savings, Inc., John*

*Stumpf, and Marc C. Oman*, N.D. Cal., Case No. 5:10-cv-02406-JF ("*Holmes*"); and

b. *Eric Hodge v. World Savings, Inc., World Savings, FSB, Wachovia Mortgage Corporation, and Does 1 through 10*, N.D. Cal., Case No. 5:09-cv-01598-JF ("*Hodge*").

1.59. "*Release*" shall have the meaning set forth in Section V(A) hereafter.

1.60. "*Released Entities*" means World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; Wells Fargo & Company; Wells Fargo Bank, N.A., John Stumpf; and Marc C. Oman, and each and all of their respective past, present, and future parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint venturers, assigns, or related entities, and each and all of their respective executors, successors, assigns, and legal representatives.

1.61. "*Releasing Party*" means each of the Plaintiffs and any other person claiming by or through any Plaintiff and his/her/its spouse, child, heir, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee, or affiliate.

1.62.   *"Request for Exclusion"* is a timely written communication by or on behalf of a Borrower in the Settlement Class stating that he or she wishes to be excluded from the Settlement Class.  To be timely, any Request for Exclusion must be postmarked on or before the last day of the Opt-Out Period/Objection Deadline.

1.63.   *"Settlement"* means the terms and conditions set forth in this Agreement.

1.64.   *"Settlement Administrator"* means, subject to approval by the Court, a mutually-agreeable independent third-party that will oversee the dissemination of the Settlement Notices pursuant to the Notice Plan, the payment of any Settlement Benefits due to Settlement Class Members, and the collection and maintenance of Requests for Exclusion and Notices of Intent to Appear and Object, as set forth in this Agreement.

1.65.   *"Settlement Benefits"* means the benefits a Settlement Class Member may receive pursuant to this Agreement as described in Section VI hereafter.

1.66.   *"Settlement Class"* means all Settlement Class A Members, Settlement Class B Members, and Settlement Class C Members (as defined hereinafter), which classes are to be certified for purposes of Settlement only, following the entry of an appropriate Order by the Court.  Excluded from the Settlement Class are the Defendants, the Additional Defendants, and any respective parent, subsidiary, affiliate, or control person of the Defendants and the Additional Defendants, as well as the officers, directors, agents, servants, and employees of the Defendants and Additional Defendants, or any judge presiding over the Lawsuit and/or any of the Related Actions, and the immediate family members of any such Person(s).

1.67.   *"Settlement Class Member"* or *"Class Member"* means all of those Persons and entities who are members of the Settlement Class and who do not submit a valid Request for Exclusion that is postmarked on or before the last day of the Opt-Out Period/Objection Deadline.

1.68.   *"Unknown Claims"* means claims that could have been raised in the Lawsuit and/or in the Related Actions and that the Releasing Parties, or any one of them, do not know or suspect to exist, which, if known by him, her, or it, might affect his, her, or its agreement to release the Released Entities or the Alleged Claims, or might affect his, her, or its decision to agree, object to, or not object to the Settlement. Upon the Effective Date, any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each Releasing Party shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state, the District of Columbia or territory of the United States, or principle of common law, or the law of any jurisdiction outside the United States, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or

believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Alleged Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

## II.      FOR SETTLEMENT PURPOSES ONLY

This Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only, and neither the fact of any provision contained in this Agreement, nor any action taken hereunder or in filings or arguments made with the Court in connection with seeking the approval of this Agreement, shall constitute, or be construed as, or be admissible as evidence as any admission of the validity of any claim or any fact alleged by the Plaintiffs in the Lawsuit, the Related Actions, or in any other pending or future action, nor as an admission of any wrongdoing, fault, violation of law, or liability of any kind on the part of the Defendants or the Additional Defendants, or as an admission by the Defendants or the Additional Defendants of any claim or allegation made in the Lawsuit, the Related Actions, in any other pending or future action, nor as an admission by the Plaintiffs, Settlement Class Members, or Class Counsel of the validity of any fact or defense asserted against them in the Lawsuit, the Related Actions, or in any pending or future other action, nor as an admission as to any other fact or matter of any kind.

## III.     REQUIRED EVENTS AND COOPERATION BY THE PARTIES

### A.     Preliminary Approval

No later than December 10, 2010, Class Counsel shall submit this Agreement to the Court for its Preliminary Approval and shall move the Court, without objection from the Defendants or any of the Additional Defendants, for one or more orders, which by their terms shall:

1.    Appoint the Class Representatives as the representatives of the Settlement Class;

2.    Appoint Class Counsel;

3.    Certify the Settlement Class under Rule 23(e) of the Federal Rules of Civil Procedure for settlement purposes only and preliminarily approve this Agreement for purposes of issuing notice to the Settlement Class;

4.    Approve the retention of a Settlement Administrator;

5.    Approve the form and contents of the Settlement Notices and the method of their dissemination to the members of the Settlement Class; and

6.    Schedule the Fairness Hearing to review Objections regarding this Settlement, to consider the Settlement's fairness, reasonableness, and adequacy, to consider the application for the Fee Award, to consider the application for the Class Representative Award, and to consider whether the Court shall issue a Judgment approving this Agreement, granting Class Counsel's application for fees and expenses and the Class Representative Award, and dismissing the Lawsuit and the Related Actions with prejudice.

**B.    Cooperation/Timing**

The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court. The Parties also agree that time is of the essence and that the dates set forth herein are material terms of this Agreement.

## IV.    CERTIFICATION OF SETTLEMENT CLASSES

For the sole and limited purpose of Settlement only, the Parties stipulate to and request that the Court certify Settlement Class A, Settlement Class B, and Settlement Class C (defined below), which stipulation is contingent upon the occurrence of the Effective Date.  Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as, an admission of any kind or be used for any purpose in the Lawsuit, the Related Actions, or in any other pending or future action.

The Court's certification of Settlement Class A, Settlement Class B, and Settlement Class C shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement, and shall not be considered the law of the case, *res judicata*, or collateral estoppel in the Lawsuit, the Related Actions, or any other proceeding unless and until the Court enters an order of Judgment, and whether or not the Judgment becomes Final, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be any stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims.  In the event the Court does not enter an order of Judgment, or the Judgment does not become Final, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Settlement Class for settlement purposes shall be null and void and the Court's certification order shall be vacated, and thereafter no class or classes will remain certified; provided, however, that Class Representatives and Class Counsel may thereafter seek certification of the same or a new class or classes before the Court, and the Defendants and the

Additional Defendants may oppose such certification on any available grounds. Nothing in this Agreement shall be argued as support for, or admissible in, an effort to certify any class in this Court or any other court if the Court does not enter an order of Judgment and the Judgment does not become Final, nor shall anything herein be admissible in any proceeding to certify this or any other classes in any other court under any circumstances.

A.   **Settlement Class A**

For the sole and limited purpose of Settlement only, the Parties stipulate to and request that the Court certify Settlement Class A pursuant to Rule 23 as follows:

> All current and former Borrowers of World Savings Bank, FSB, now known as Wachovia Mortgage, FSB ("Wachovia Mortgage") who, (a) on or after August 1, 2003 and on or before December 31, 2008 entered into a loan transaction with Wachovia Mortgage that, as of the date of the loan's funding, was secured by their primary residence; (b) obtained financing from Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan promissory note; (c) have not previously released their claims pursuant to another settlement agreement, final judgment, or other dealings with Wachovia Mortgage; and (d) as of the Date of Preliminary Approval, no longer have a Pick-a-Payment mortgage loan because they sold the property securing the loan, refinanced the loan, paid off the loan personally, or have already obtained a loan modification that converted the loan from a Pick-a-Payment mortgage loan.

B.   **Settlement Class B**

For the sole and limited purpose of Settlement only, the Parties stipulate to and request that the Court certify Settlement Class B pursuant to Rule 23 as follows:

> All current Borrowers of World Savings Bank, FSB, now known as Wachovia Mortgage, FSB ("Wachovia Mortgage") who, (a) on or after August 1, 2003 and on or before December 31, 2008 entered into a loan transaction with Wachovia Mortgage that is secured by their primary residence; (b) obtained financing from Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan promissory note; (c) have not previously released their claims pursuant to another settlement agreement, final judgment, or other dealings with Wachovia Mortgage; and (d) as of the Date of Preliminary Approval, still have a Pick-a-Payment mortgage loan

and are not in Default.

C.    Settlement Class C

For the sole and limited purpose of Settlement only, the Parties stipulate to and request

that the Court certify Settlement Class C pursuant to Rule 23 as follows:

> All current Borrowers of World Savings Bank, FSB, now known
> as Wachovia Mortgage, FSB ("Wachovia Mortgage") who, (a) on
> or after August 1, 2003 and on or before December 31, 2008
> entered into a loan transaction with Wachovia Mortgage that is
> secured by their primary residence; (b) obtained financing from
> Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan
> promissory note; (c) have not previously released their claims
> pursuant to another settlement agreement, final judgment, or other
> dealings with Wachovia Mortgage; and (d) as of the Date of
> Preliminary Approval, still have a Pick-a-Payment mortgage loan
> and are in Default.

V.    RELEASES

A.    **The Release:**  In consideration for the Settlement Benefits described herein, each

and all of the Plaintiffs hereby agree to and by operation of law shall be deemed to agree to fully,

finally, and completely release and forever discharge the Alleged Claims and any and every

actual or potential known or unknown claim, liability, right, demand, suit, matter, obligation,

damage, loss or cost, action or cause of action, of every kind and description that the Releasing

Party has or may have, including assigned claims and Unknown Claims, asserted or unasserted,

latent or patent, that is, has been, or could have been or in the future might be asserted by any

Releasing Party in the Lawsuit, the Related Actions, any other case consolidated in the Lawsuit,

or in any other action or proceeding in this Court, or any other court, administrative venue,

tribunal or arbitration or other forum, regardless of the type or amount of relief or damages

claimed, against any of the Released Entities arising out of the Alleged Claims, the origination of

the Settlement Class Member's Pick-a-Payment mortgage loan, the manner in which the

Defendants applied the Settlement Class Member's payments to principal and interest, negative

amortization, the Pick-a-Payment mortgage loan's potential for negative amortization, the disclosure of the Pick-a-Payment mortgage loan's potential for negative amortization, and the disclosure of the manner in which payments would be applied to principal and interest.

B.     Subject to the provisions of Section V(A), nothing in this Release shall preclude any Settlement Class Member from later negotiating a modification of the terms of their Pick-a-Payment mortgage loan with the Defendants.

C.     The Plaintiffs hereby agree and acknowledge, and by operation of law will be deemed to agree and acknowledge as of the Effective Date, that each and all of the provisions of this Section V, separately and severally, constitute essential terms of this Agreement and shall be construed in favor of effectuating a complete settlement of the Lawsuit and the Related Actions.

## VI.   SETTLEMENT BENEFITS

A.     **Common Fund.** The Defendants shall establish a Common Fund in the amount of Fifty Million and No/100 Dollars ($50,000,000.00) for the benefit of all Settlement Class Members. The Defendants shall pay or cause to be paid to the Settlement Administrator the total sum of $50 million within five (5) business days after the Effective Date. The distribution of the Common Fund to Settlement Class Members shall be based upon a Plan of Allocation that divides the total amount of the Common Fund, after deduction of the Class Representative Award, by the total number of (1) Settlement Class A Members who timely submit a valid Claim Form pursuant to the process described in Section VIII(B) hereafter and (2) all Settlement Class B and Settlement Class C Members. Settlement Class B and Settlement Class C Members will not be required to submit a Claim Form to receive payment. Settlement Class Members shall be entitled to obtain only one (1) payment from the Common Fund, regardless of the number of Pick-a-Payment mortgage loans the Settlement Class Members obtained during the Class Period.

The Settlement Administrator will be responsible for distributing payments to the Settlement Class A Members who timely submit a valid Claim Form and to all Settlement Class B and Settlement Class C Members, pursuant to the Plan of Allocation. All payments to Settlement Class A Members who timely submit a valid Claim Form and to Settlement Class B and Settlement Class C Members, pursuant to the Plan of Allocation, will be by check, sent by first class mail to the address provided in the valid Claim Form for each Settlement Class A Member who timely submits a valid Claim Form, and to the last known address for each Settlement Class B and Settlement Class C Member. Each check will state on its face that the check will expire and become null and void unless cashed within ninety (90) calendar days of the date of issuance. Any check to a Settlement Class Member that is returned to the Settlement Administrator with a forwarding address will be re-sent to that forwarding address and the Settlement Administrator's database will be updated with the forwarding address information. For any check to a Settlement Class Member that is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall check for an NCOA® update or conduct an Accurint® search to determine the Settlement Class Member's location, if possible. If any check to a Settlement Class Member is not cashed sixty (60) calendar days after the date of the instrument, the Settlement Administrator shall send a reminder notice by first class mail to that Settlement Class Member. The total amount of all checks that are returned as undeliverable, with no forwarding address, or that remain uncashed ninety (90) calendar days after the date of issuance of the instrument shall first be used to reimburse the Defendants for Administration Expenses, with any remaining funds to become part of a *cy pres* fund to be distributed equally to The National Consumer Law Center, a not-for-profit organization selected by the Class Representatives, and a not-for-profit organization selected by the Defendants.

B.      **Fee Award.**  Class Counsel will apply to the Court for an award of attorneys' fees and costs in a total amount not to exceed Twenty-Five Million and No/100 Dollars ($25,000,000.00).  The Defendants will not object to the request so long as it does not exceed $25,000,000.00, and the Defendants will pay the amount awarded by the Court, up to but not more than $25,000,000.00, to Class Counsel as compensation for attorneys' fees and costs.  This payment is separate from and in addition to any other payments agreed to as part of this Settlement.  The Defendants shall pay such amount, as ordered by the Court, within five (5) business days after the Effective Date, by wire transfer to an account designated by Lead Class Counsel, and such payment shall constitute complete consideration for all work performed and all expenses and costs incurred to date and for all work to be performed and all expenses and costs to be incurred through the completion of the Lawsuit, the Related Actions, and this Settlement, other than those costs described in Section VI(C) below.

C.      The Defendants shall pay all Administration Expenses in an amount not to exceed One Million and No/100 Dollars ($1,000,000.00) separate from and in addition to any other payments agreed to as part of this Settlement.

D.      The Defendants shall not be obligated to pay more than the amount of the Common Fund ($50,000,000.00), plus the amount of the Fee Award approved by the Court, Administration Expenses not to exceed $1,000,000.00, any costs associated with the Loan Modification Program discussed in Section VI(E) below, and the HAFA/Short Sale/Deed-in-Lieu of Foreclosure payments discussed in VI(F) below, in total settlement of the Lawsuit, including all Settlement Class Member payments, Administration Expenses, the Class Representative Award, the Fee Award, and any other amounts whatsoever.

E.     Loan Modification Program.   Commencing on December 18, 2010 and continuing until June 30, 2013, the Defendants shall make loan modifications available for Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members in accordance with the following provisions of this Section VI(E). Such loan modifications shall be in addition to the amounts paid pursuant to the Common Fund, the Fee Award, and Administration Expenses described in Sections VI(A), (B), and (C) of this Agreement.

1.     *Loan Modifications To Be Considered.*   Subject to the provisions contained in Section VI(E)(4) and consistent with federal requirements, each Settlement Class B Member in Imminent Default, who later becomes in Imminent Default, or who later becomes in Default, and all Settlement Class C Members first shall be considered for a HAMP Modification.   Subject to the provisions contained in Section VI(E)(4), Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who do not qualify for or elect not to accept a HAMP Modification shall be considered for a MAP2R Modification on the terms as outlined in Sections VI(E)(2), (3), and (5) of this Agreement.

2.     *MAP2R Modification.*   Subject to the provisions contained in Section VI(E)(4), Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who do not qualify for or elect a HAMP Modification shall be considered for a MAP2R Modification on the terms as outlined in Sections VI(E)(3) and (5) of this Agreement. The following process shall commence upon receipt of the documents described in

Section VI(E)(7) and subsequent verification that the Settlement Class Member's DTI is above thirty-one percent (31%). If a loan is modified under MAP2R, the loan will be converted to a fully-amortizing loan and the negative amortization feature will be eliminated.

      3.    *Waiver of Prepayment Penalties.*   The Defendants will waive all prepayment penalties and assess no fees in connection with a MAP2R Modification. The Defendants shall not require a Borrower to make any up-front payment of arrears as part of the MAP2R Modification process.

      4.    *Borrowers With Prior Modifications.*  Settlement Class Members who have received earlier loan modifications not pursuant to this Agreement will not be eligible to be considered for new loan modifications under this Agreement.

      5.    *MAP2R Waterfall.* The Defendants will apply the following waterfall, in the order listed below, until the Settlement Class Member's Monthly Payment reaches a DTI of thirty-one percent (31%). The DTI may be slightly higher than thirty-one percent (31%) if the next step or action within the waterfall will result in a DTI below thirty-one percent (31%). Once a DTI as close as possible to thirty-one percent (31%) is reached, the Defendants are not required to apply any additional steps in the waterfall, nor actions within a step. If any step in the waterfall is already achieved, the Defendants will proceed to the subsequent step. If all steps of the waterfall have been exhausted and a DTI of thirty-one percent (31%) cannot be achieved, the Defendants are not required to offer a MAP2R Modification. Following application of the waterfall, all loans must pass the NPV test (as outlined in Section 1.47 and Section VI(E)(6) before a MAP2R Modification must be offered. The MAP2R Modification waterfall is as follows:

a.     *Step 1*:  Waive all Accrued Interest, outstanding late charges, and outstanding fees.

b.     *Step 2*:  Escrow-related Advances and Corporate and Default-Related Advances first will be capitalized, then immediately and permanently forgiven.  If this forgiveness combined with the waiver of all Accrued Interest, outstanding late charges, and outstanding fees in Section VI(E)(5)(a) does not equal a number that represents ten percent (10%) of the unpaid principal balance (calculated by multiplying the pre-modification unpaid principal balance by ten percent (10%)), then Deferred Interest, if any exists, will be waived until the total of the waived Accrued Interest, Escrow-related Advances, outstanding late charges, outstanding Corporate and Default-Related Advances, and Deferred Interest results in a number that represents ten percent (10%) of the unpaid principal balance.  In the absence of Deferred Interest, only Accrued Interest, outstanding late charges, outstanding fees, Escrow-related Advances, and Corporate and Default-Related Advances will be forgiven.  While Accrued Interest, outstanding late charges, outstanding fees, Escrow-related Advances, and Corporate and Default-Related Advances will be waived for Settlement Class B Members in Imminent Default and all Settlement Class C Members, regardless of LTV, forgiveness of Deferred Interest will be applied only to the extent that it does not reduce the Settlement Class Member's current LTV below one hundred percent (100%), even if the amount of such forgiveness represents less than ten percent (10%) of the unpaid principal balance.

c.    *Step 3*:  Forgive principal until an LTV of one hundred fifty percent (150%) is achieved.

d.    *Step 4*:  Extend the loan term and re-amortize the loan in one (1) month increments to a maximum term of four hundred eighty (480) months.

e.    *Step 5*:  Forbear principal with the opportunity to be forgiven, as outlined in Section VI(E)(5)(h), until an LTV of one hundred twenty-five percent (125%) is achieved.  The principal forbearance amount is non-interest bearing and non-amortizing.  The amount of principal forbearance that is not forgiven will result in a balloon payment fully due and payable upon the earliest of the transfer of ownership of the property, payoff of the interest-bearing unpaid principal balance, or maturity of the loan.  Should the Defendants choose to participate in HAMP Principal Reduction Alternative ("PRA"), Supplemental Directive 10-05, the LTV level of this step shall be adjusted from one hundred twenty-five percent (125%) to one hundred fifteen percent (115%) for modifications done on a prospective basis from the date the Defendants elect to participate in the PRA directive.

f.    *Step 6*:  Reduce the interest rate in .125% increments.  In all cases, the interest rate shall not be reduced below a floor of two percent (2%).  If the interest rate after modification is below the Market Rate, this reduced rate will be in effect for the first three (3) years following the date of the loan modification.  Thereafter, it will be increased by a maximum of one percent (1%) per year at each twelve (12) month anniversary date of the original modification until it reaches the Market Rate, at which time the rate shall be fixed for the remaining

loan term. If the interest rate after modification is above or equal to the Market Rate, then that resulting rate shall become the permanent rate for the remaining loan term. In no event will a step rate increase result in a greater than fifteen percent (15%) increase in the portion of the monthly payment for principal and interest. If it does, then the rate shall only be increased by the amount that results in an interest rate such that the increase in the monthly principal and interest portion of the payment is no greater than fifteen percent (15%); thereafter, the rate will continue to increase according to the terms above each year until the Market Rate is ultimately reached.

g.  *Step 7*: Forbear principal without the opportunity for conditional forgiveness until an LTV of one hundred percent (100%) is reached.

h.  *Step 8*: Conditional Forgiveness. Principal forborne under Section VI(E)(5)(e) will be forgiven if the Settlement Class Member who received a MAP2R Modification is in Good Standing on the first, second, and third anniversaries of the loan modification. On each of the above anniversary dates that such Settlement Class Member is in Good Standing, equal portions of one-third (1/3) of the principal forbearance amount will be permanently forgiven.

6.  *NPV Test*. All potential MAP2R Modifications will be subjected to the NPV Test described in Section 1.47 prior to being offered to a Settlement Class Member. The Defendants shall not be required to offer a MAP2R Modification to any Settlement Class Member whose NPV Test yields a negative NPV result. However, the Defendants, may, in their sole discretion, offer a MAP2R Modification to a Settlement Class Member

whose NPV Test yields a negative NPV result, or, if possible, the Defendants may offer an alternate modification.

      7.    *Documentation Requirements*.  In determining the documents required of Settlement Class Members to apply for MAP2R Modifications, the Defendants, consistent with their need to obtain relevant financial information, will seek to minimize the burden on Settlement Class Members and maximize participation in the MAP2R Modification program.  The Defendants will not request signed affidavits from Settlement Class Members to document their hardship, and will not require more than one (1) year's income tax return, but will require documentary evidence of the Settlement Class Member's current income.

      8.    *Servicing Commitments*.  In order to ensure that Borrowers are appropriately considered for a MAP2R Modification in a timely manner, the Defendants shall:

      a.    Maintain a dedicated, adequately staffed help line to handle inquiries from Settlement Class Members, including Spanish-speaking Settlement Class Members;

      b.    Assign a primary point of contact to each Settlement Class B Member and Settlement Class C Member seeking a loan modification;

      c.    Notify Settlement Class Members in writing within ten (10) business days of their submitting a modification request of any documents believed to be missing and necessary for evaluation for a MAP2R Modification;

      d.    Provide Settlement Class Members who do not qualify for HAMP or MAP2R Modifications, within thirty (30) calendar days of the Defendants'

receipt of all required documentation from the Settlement Class Member, with a written explanation. Defendants shall provide Lead Counsel information about who did not qualify and the reason for the denial;

      e.    Establish a formal second-look and escalation protocol for all Settlement Class B Members and Settlement Class C Members seeking a loan modification.

9.    There is no obligation for the Defendants to offer MAP2R Modifications to Settlement Class Members who cannot be qualified under the HAMP or MAP2R guidelines.

10.    *Restrictions on the Foreclosure Process.* The Defendants will apply HAMP rules under Supplemental Directive 10-02, dated March 24, 2010, and any applicable state laws regarding initiating or advancing foreclosures to Settlement Class Members being considered for HAMP or MAP2R Modifications. In addition, the Defendants will ensure that each Settlement Class B Member and Settlement Class C Member being considered for HAMP or MAP2R Modifications:

      a.    Has notes in his or her electronic records accessible to all loan mitigation, modification, and foreclosure departments that indicate whether he or she is being considered for a loan modification; and

      b.    Receives in any foreclosure-related communication notice that he or she is still being considered for a modification, with the exception of notices generated by outside counsel or foreclosure trustee companies retained by the Defendants to assist with or conduct the foreclosure process. The Defendants will develop and implement policies and procedures to provide notification to

their foreclosure attorneys/trustees regarding a Settlement Class Member's modification status.

11. *Loan Modifications After June 30, 2013.* Subsequent to June 30, 2013, the Defendants will continue to evaluate Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members for potential loan workout solutions that are commercially reasonable and are designed to help avoid foreclosure. These solutions may or may not be MAP2R Modifications and their terms will be in the sole discretion of the Defendants.

F. **HAFA/Short Sale/Deed-in-Lieu of Foreclosure Provisions.** The Defendants will offer the Home Affordable Foreclosure Alternatives ("HAFA") or its internal short-sale or deed-in-lieu of foreclosure alternatives to Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who are unable to qualify for loan modifications under the HAMP or MAP2R guidelines and who are otherwise qualified for a short-sale or deed-in-lieu of foreclosure under HAFA or the Defendants' internal guidelines. Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who qualify for HAFA will receive an incentive payment of at least Three Thousand and No/100 Dollars ($3,000.00) for a short-sale or deed-in-lieu of foreclosure to assist with relocation expenses. Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who do not qualify for HAFA but otherwise qualify under the Defendants' internal guidelines for a short-sale or deed-in-lieu of foreclosure will receive payments of at least One Thousand Five Hundred

Dollars ($1,500.00) to assist with relocation expenses. These benefits are in addition to and separate from the Common Fund and shall remain open until June 30, 2013.

      G.      Settlement Class C Members who, at any time after the Date of Preliminary Approval, cure their Default but who later become in Imminent Default or who again go into Default still shall be eligible for the Loan Modification Program described in Section VI(E), or, if applicable, the HAFA/Short Sale/Deed-in-Lieu of Foreclosure Provisions described in Section VI(F).

      H.      The Defendants shall designate an employee as the Compliance Officer responsible for this Agreement. The Compliance Officer will be responsible for providing Lead Class Counsel quarterly reports, through June 30, 2013, which will be provided within forty-five (45) calendar days after the end of each quarter. The quarterly reports will provide the following information: (1) the number of Settlement Class Members who have requested loan modifications; (2) the number of Settlement Class Members who received HAMP Modifications or MAP2R Modifications; (3) the number of Settlement Class Members denied loan modifications; and (4) the number of Settlement Class members who received HAFA/Short Sale/Deed-in-Lieu of Foreclosure payments.

      I.      The Common Fund, the Loan Modification Program, the HAFA/Short Sale/Deed-in-Lieu of Foreclosure payments, and the payments of the Fee Award and Administration Expenses described in Sections VI(A) through (F) above will constitute adequate consideration for the Settlement and will be made in full and final settlement of:

      1.      The Alleged Claims during the Class Period;

      2.      Administration Expenses;

      3.      Claims for attorneys' fees and costs;

    4.      The Class Representative Award; and

    5.      Any other obligation of the Parties under this Agreement.

## VII.   CLASS REPRESENTATIVE AWARD

The Parties have agreed that Class Counsel shall be entitled to apply to the Court for a Class Representative Award, the total of which shall not exceed One Hundred Twenty Five Thousand and No/100 Dollars ($125,000.00) and that the Defendants will not object to any application by Class Counsel for a Class Representative Award of up to this amount. The Class Representative Award shall be paid from the Common Fund described in Section VI(A), and is intended to collectively compensate all of the Class Representatives for their efforts in bringing these claims and achieving the benefits of this Agreement on behalf of the Settlement Class, in addition to any Settlement Benefits to which they may be entitled under this Agreement. The Settlement Administrator will pay or cause to be paid any Class Representative Award approved by the Court (subject to the maximum described above), within thirty (30) calendar days of the Effective Date, by check to the Class Representatives, in accordance with instructions to be provided by Lead Class Counsel. Lead Class Counsel shall be solely responsible for allocation of the Court-awarded amount of the Class Representative Award amongst the Class Representatives.

## VIII.   SETTLEMENT ADMINISTRATION

    A.      **Settlement Administrator's Duties**

    1.      **Cost Effective Administration.** The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement in a rational, responsive, cost effective, and timely manner.

2.      Maintenance of Records.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement.  The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and the Defendants' Counsel upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall provide Class Counsel and the Defendants' Counsel with information concerning notice, administration, and implementation of the Agreement.  Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts from the Common Fund paid to Settlement Class Members.   Without limiting the foregoing, the Settlement Administrator shall:

> a.      Receive Requests for Exclusion from Plaintiffs seeking to exclude themselves from this Agreement and provide Class Counsel and the Defendants' Counsel with copies thereof within three (3) business days of the deadline for postmarking such forms and requests.  If the Settlement Administrator receives any Requests for Exclusion or other requests from Plaintiffs after its initial provision of Requests for Exclusion to Class Counsel and Defendants' Counsel, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and the Defendants' Counsel.

> b.      Receive and review Claim Forms, and reject materially incomplete Claim Forms.  In addition, the Settlement Administrator may reject a Claim Form where there is evidence of abuse or fraud.

c.      Make available for inspection by Class Counsel and the Defendants' Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

d.      Assist in the dissemination of notices to Class Members and in the publication of Notice as set forth herein.

e.      Payments to Settlement Class Members.   Within thirty (30) calendar days of the Effective Date, the Settlement Administrator shall distribute payments to the Settlement Class Members as outlined in Section VI(A).

f.      Requests for Additional Information.  In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

g.      Deposit of Common Fund.  The Settlement Administrator will place all monies received by it under the terms of this Agreement, other than payments to it for services rendered or for expenses, into a separate, interest-bearing trust account or other escrow account at an institution to be approved by Lead Class Counsel and the Defendants' Counsel until such funds are disbursed. All interest and other earnings received shall accrue to the benefit of said account. The account shall be designated the "Pick-a-Payment Settlement Fund."  Such account shall satisfy the requirements of Treas. Reg. § 1.468B-1(h).

h.      The Common Fund shall be deemed at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 and Section 468B of the Internal Revenue Code (the "Code"). The Settlement Administrator, and

any successor administrator, shall comply with all requirements applicable to such qualified settlement fund, including all requirements under Section 468B of the Code, the Treasury Regulations promulgated thereunder, and any comparable provisions of state or local tax laws, shall take all actions necessary to create and maintain the status of the Common Fund as a qualified settlement fund for federal, state, and local income tax purposes, and shall take no action that will adversely affect the qualification of the Common Fund as a qualified settlement fund for federal, state, and local income tax purposes. In addition, if requested by the Defendants, the Settlement Administrator, and any successor administrator, shall join with the Defendants in the timely filing of a "relation-back election" (within the meaning of Treas. Reg. § 1.468B-1(j)(2)) with respect to the Common Fund. Pursuant to such election, the Settlement Administrator, or any successor administrator, shall comply with all of the requirements contained in Treas. Reg. § 1.468B-1(j)(2) that apply to such election. It shall be the responsibility of the Settlement Administrator, or any successor administrator, to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.

       i.     For purposes of Section 468B of the Code, and the Treasury Regulations promulgated thereunder, the Settlement Administrator, or any successor administrator, shall be the "administrator" (as defined under Treas. Reg. § 1.468B-2(k)(3)) of the qualified settlement fund. The Settlement Administrator, or any successor administrator, shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Common Fund

(including, without limitation, the returns described in Treas. Reg. §§ 1.468B-2(k) and 1.468B-2(l)). Such returns (as well as the election described in Section VIII(A)(2)(h) of this Agreement) shall be consistent with this Section VIII(A)(2)(i) and in all events shall reflect that all taxes (including any interest, penalties, or additions to tax ("Taxes") on the income earned by the Common Fund shall be paid out of the Common Fund as provided herein).

j.     All Taxes arising with respect to the income earned on the Common Fund, including any Taxes that may be imposed upon the Defendants with respect to any income earned by the Common Fund for any period during which the Common Fund does not qualify as a "qualified settlement fund" for federal and state income tax purposes, any withholding Taxes on distributions from the Common Fund, and all expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of mailing and distribution costs and expenses relating to filing any return described in this Section) ("Tax Expenses") shall be paid by the Settlement Administrator out of the Common Fund.

k.     It shall be the duty of the Settlement Administrator, or any successor administrator, to file or cause to be filed all necessary tax returns or other necessary reports regarding the administration of the Common Fund.

B.     **Submission of Claim Forms**

1.     The Settlement Administrator shall maintain and administer a dedicated settlement website (www.pickapaysettlement.com) containing claims information and related documents, along with an electronic version of the Claim Form that Settlement

Class A Members can view, complete, and submit electronically, as discussed below. The Parties shall agree on all information and documents to be posted on this website.

2.      Paper Claim Form Submission.   The Settlement Notices to Settlement Class A Members shall include a Claim Form, substantially in the form attached as Exhibit 1. Settlement Class A Members wishing to receive payment pursuant to Section VI(A) of this Agreement by submitting a paper Claim Form must mail completed paper Claim Forms to the Settlement Administrator, and those paper Claim Forms must be postmarked on or before the Claims Deadline.  Any paper Claim Form that is postmarked after the Claims Deadline shall be deemed untimely, an invalid claim, and a waiver by the submitting Settlement Class A Member of any claim for payment under Section VI(A) of this Agreement.

3.      Electronic Claim Form Submission.  The Settlement Notices to Settlement Class A Members shall also include a statement informing Settlement Class A Members that a version of the Claim Form that can be viewed, completed, and submitted electronically is available on the Settlement website.  Settlement Class A Members wishing to receive payment pursuant to Section VI(A) of this Agreement by submitting an electronic Claim Form must complete and submit the electronic Claim Form on or before the Claims Deadline.  After the Claims Deadline, the electronic Claim Form shall be disabled such that electronic Claim Forms will no longer be able to be submitted.

IX.   **PAYMENTS TO SETTLEMENT ADMINISTRATOR**

Within ten (10) calendar days after the Date of Preliminary Approval as contemplated by this Agreement, or before, at the Defendants' sole discretion, the Defendants shall advance to the

Settlement Administrator the sums necessary to cover the costs of issuing the Settlement Notices and other Administration Expenses.

X.      NOTICE TO THE SETTLEMENT CLASS

A.      Upon Preliminary Approval of this Agreement (and as the Court may direct), the Parties shall cause the Settlement Administrator to disseminate the Settlement Notices to the Settlement Class Members.  Such notices shall comport with due process and be effectuated pursuant to a Notice Plan.

B.      The Notice Plan shall include:

1.      Direct Notice.   Within thirty (30) calendar days after the Date of Preliminary Approval, the Defendants shall—based on a review of business records and data in their possession, custody, and control—provide the Settlement Administrator with the U.S. mail addresses and property addresses for any reasonably identifiable Persons who are potential members of the Settlement Class. The Settlement Administrator shall conduct a National Change of Address Update as soon as practicable after receipt of this information.   Within fifteen (15) calendar days of the receipt of such addresses, Settlement Notices substantially in the form attached as Exhibits 2 through 4 will be sent by the Settlement Administrator to such potential Persons in the Settlement Class by First Class U.S. Mail.

2.      Publication Notice.  Publication Notice shall be made by purchasing, for three (3) consecutive calendar days, a one-quarter (1/4) page advertising space in the main news section of *USA Today*, to be published within thirty (30) calendar days after the Date of Preliminary Approval of this Agreement or as soon thereafter as the

publication schedule of that newspaper will permit.  The text of such notice is provided in Exhibit 5.

      3.    Internet Publication Notice.  Immediately following Preliminary Approval of the Agreement, notice shall be provided on a dedicated settlement website (www.pickapaysettlement.com) to be administered by the Settlement Administrator.

      4.    Press Release.  After the Date of Preliminary Approval, the Parties shall prepare and distribute to local, national, and syndicated news organizations a joint press release, approved by all Parties, describing this Agreement.  The Parties agree that they will keep confidential the terms of this Agreement, the existence of this Agreement, and the negotiations surrounding this Agreement, and that they will not make any comments regarding this Agreement, or the negotiations surrounding this Agreement, until the Date of Preliminary Approval. 'The Parties agree that if they receive media or other inquiries regarding this Agreement, or the negotiations surrounding this Agreement, prior to the Date of Preliminary Approval, they will jointly agree on the response to such inquiry, or if no joint agreement has been reached, to respond that they have no comment.  Notwithstanding the provisions of this Section, the Parties agree that they are required to move the Court for Preliminary Approval and to file this Agreement with the Court in connection with moving for such Preliminary Approval, and that such filing shall not be considered a breach of this Agreement or any other agreement of the Parties.

      5.    The Settlement Notices shall advise the Settlement Class of its rights, including the right to opt-out and/or comment upon or object to the Agreement or its terms, and for Settlement Class A Members, contain a Claim Form.  The Settlement Notices shall provide that any objection to this Agreement, and any papers submitted in

support of said objection, shall be reviewed by the Court at the Fairness Hearing, only if, on or before the Opt-Out Period/Objection Deadline as approved by the Court and to be specified in the Settlement Notices, the Person making the objection files notice of his or her intention to do so and files copies of such papers he or she proposes to submit at the Fairness Hearing with the Clerk of Court and delivers copies of the same by mail (postmarked by the Opt-Out Period/Objection Deadline), hand (delivered by the Opt-Out Period/Objection Deadline), or overnight delivery service (delivered to overnight courier by the Opt-Out Period/Objection Deadline) to both Class Counsel and the Defendants' Counsel as specified in the Settlement Notices.

## XI.   NOTICE UNDER THE CLASS ACTION FAIRNESS ACT

A.      The Class Action Fairness Act of 2005 ("CAFA") requires the Defendants to inform certain federal and state officials about this Settlement. *See* 28 U.S.C. § 1715.1.

B.      Under the provisions of CAFA, the Settlement Administrator, on behalf of the Defendants,will serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Settlement with the Court. *See* 28 U.S.C. § 1715(b).

C.      The Parties agree that the Defendants are permitted to provide CAFA notice as required by law and that any notice by the Defendants shall be done to effectuate the Settlement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

## XII.   OPT-OUTS AND OBJECTIONS

A.      Any Person may request to be excluded from the Settlement Class at any time before the Opt-Out Period/Objection Deadline, by complying with the procedures for doing so as set forth in the Court-approved Settlement Notices.  In order to exercise the right to opt-out and be excluded from the Settlement Class, the Person seeking to do so must complete and return to

the Settlement Administrator a Request for Exclusion, such that it is postmarked on or before the Opt-Out Period/Objection Deadline. Requests for Exclusion that are postmarked after the Opt-Out Period/Objection Deadline will be considered invalid and of no effect, and the Person who untimely submits a Request for Exclusion will remain a Settlement Class Member and will be bound by any Orders entered by the Court, including a Judgment approving the Agreement and implementing the Release contemplated thereby. Except for those Persons who have properly and timely submitted Requests for Exclusion, all Settlement Class Members will be bound by this Agreement and the Judgment, including the Release herein contained. Any Person who timely and properly submits a Request for Exclusion shall not (1) be bound by any orders or Judgment entered in the Lawsuit nor by the Release herein contained; (2) be entitled to any relief under this Agreement; (3) gain any rights by virtue of this Agreement; or (4) be entitled to object to any aspect of this Agreement or the Lawsuit. Each Person requesting exclusion from the Settlement Class must personally sign his or her own individual Request for Exclusion. No Person may opt-out of the Settlement Class any other Person, or be opted-out by any other Person, and no Person shall be deemed opted-out of the Settlement Class through any purported "mass" or "class" opt-outs.

     B.    Any Settlement Class Member who intends to object to this Agreement must submit to the Court, with copies sent to Lead Class Counsel and the Defendants' Counsel, such that it is postmarked on or before the Opt-Out Period/Objection Deadline, a Notice of Intent to Appear and Object that includes his or her personal signature and his or her full name and address, and includes all arguments, citations, and evidence supporting the objection, states that he or she is a member of the Settlement Class, and provides a statement whether the objector intends to appear at the Fairness Hearing, either with or without counsel. Objections must be

postmarked on or before the Opt-Out Period/Objection Deadline. No Settlement Class Member shall be heard, and no papers, briefs, or pleadings submitted by such Settlement Class Member, shall be received or considered by the Court unless the Settlement Class Member's properly completed and signed statement of objection and Notice of Intent to Appear and Object is postmarked by the Opt-Out Period/Objection Deadline. Any Settlement Class Member who fails to timely or properly file a written objection and Notice of Intent to Appear and Object shall be deemed to have waived his or her objections and be forever barred from making any such objections in this Lawsuit, the Related Actions, or in any other action or proceeding.

C.    Any Settlement Class Member who fails to strictly comply with the provisions and deadlines of this Section shall waive and forfeit any and all rights he or she may have to appear separately and/or object, and shall be bound by all the terms of this Agreement, by the Release, and by all other proceedings, orders, and Judgment in the Lawsuit.

## XIII. TERMINATION OF AGREEMENT

A.    The Class Representatives in the Lawsuit, on behalf of the Settlement Class Members, by Class Counsel, and the Defendants, by their counsel, shall each have the right to unilaterally terminate this Agreement by providing written notice of their or its election to do so ("Termination Notice") to all other Parties hereto within forty-five (45) calendar days of: (1) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (2) the Court's refusal to grant final approval of this Agreement in any material respect; (3) the Court's refusal to enter the Judgment in the Lawsuit in any material respect; or (4) the date upon which the Judgment is modified or reversed in any material respect by the Ninth Circuit Court of Appeals or the U.S. Supreme Court. If, at the conclusion of Opt-Out Period/Objection Deadline, (1) more than three thousand (3,000) of the Persons identified by the Defendants as potential

Settlement Class A Members; or (2) more than two thousand (2,000) of the Persons identified by the Defendants as potential Settlement Class B Members; or (3) more than five hundred (500) of the Persons identified by the Defendants as potential Settlement Class C Members, complete and return a proper and timely Request for Exclusion or Notice of Intent to Appear and Object, the Defendants shall have, in their sole and absolute discretion, the option to terminate this Agreement, within ten (10) business days after the conclusion of the Opt-Out Period/Objection Deadline.  In order to invoke this right, the Defendants must file with the Court a document entitled "Notice of Nullification of Settlement."

## XIV.   EXCLUSIVE REMEDY; DISMISSAL OF LAWSUIT; JURISDICTION OF COURT

A.    This Agreement shall be the sole and exclusive remedy of Settlement Class Members against any Released Entity relating to any and all Alleged Claims.  No Released Entity shall be subject to any other Alleged Claim-related liability or expense of any kind to any Settlement Class Member who has not timely filed a valid Request for Exclusion with respect to any Alleged Claim.  Upon the Effective Date, each and every Settlement Class Member shall be permanently barred and enjoined from initiating, asserting, and/or prosecuting any Alleged Claim(s) against any Released Entity in any court, tribunal, forum, or proceeding.

B.    The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Lawsuit, the Parties, Settlement Class Members, and the Settlement Administrator in order to interpret and enforce the terms, conditions, and obligations under this Agreement.

## XV.   FINAL APPROVAL AND JUDGMENT ORDER

A.    No later than ten (10) calendar days prior to the Fairness Hearing, the Settlement Administrator shall file with the Court and serve on counsel for all Parties a declaration stating

that any required Notice has been completed in accordance with the terms of the Preliminary Approval Order.

      B.    At least fourteen (14) calendar days prior to the Fairness Hearing:

          1.    The Parties shall file a joint motion requesting that the Court grant final approval of the Settlement Agreement, with Class Counsel filing a memorandum of points and authorities in support of such motion;

          2.    Class Counsel shall file with the Court and serve on counsel for the Defendants its motion requesting the Court's approval of the Fee Award; and

          3.    Class Counsel shall file a memorandum addressing any timely submitted Objections to the Settlement.

      C.    At the Fairness Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable, and adequate, whether any Objections to the Settlement should be overruled, whether the Fee Award and the Class Representative Award should be approved, and whether a Judgment finally approving the Settlement should be entered.

      D.    This Agreement is subject to and conditioned upon the issuance by the Court of the Judgment which grants final approval of this Agreement in accordance with applicable jurisprudence, and providing the relief specified below, which relief shall be subject to the terms and conditions of this Agreement, the occurrence of the Effective Date, and the Parties' performance of their continuing rights and obligations hereunder.  Such Judgment shall:

          1.    Dismiss the Lawsuit with prejudice and without costs, other than as described herein, and order Class Counsel to effectuate the dismissal of all Related Actions with prejudice;

2.      Decree that neither the Judgment nor this Agreement constitute an admission by the Defendants or the Additional Defendants of any liability or wrongdoing whatsoever;

3.      Bar and enjoin all Settlement Class Members from asserting against any Released Entity any Alleged Claim which the Settlement Class Member had, has, or may have in the future, including in the Lawsuit and any Related Actions;

4.      Release each Released Entity from the Alleged Claims, which any Settlement Class Members have, had, or may have in the future, against such Released Entity;

5.      Determine that this Agreement is entered into in good faith and is reasonable, fair, and adequate, and in the best interests of the Settlement Class;

6.      Preserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including the Defendants and all Settlement Class Members, to administer, supervise, construe, and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Judgment; and

7.      Incorporate any other provisions deemed necessary and just which are consistent with this Agreement.

## XVI.   REPRESENTATIONS AND WARRANTIES

Each signatory represents and warrants:

A.      That he, she, or it has all requisite power and authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby;

B.   That the execution, delivery, and performance of this Agreement and the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory; and

C.   That this Agreement has been duly and validly executed and delivered by each signatory and constitutes its legal, valid, and binding obligation.

## XVII. MISCELLANEOUS PROVISIONS

### A.   Entire Agreement

This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement.   This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval.   The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent agreement of Class Counsel and Defendants' Counsel prior to dissemination to the Settlement Class.

### B.   Governing Law

This Agreement shall be construed under and governed by the laws of the State of California, applied without regard to laws applicable to choice of law.

### C.   More Favorable Agreement

In the event that Wells Fargo Bank, N.A. is required to change the terms of its 2010 settlement with the Attorneys General of Arizona, Florida, Georgia, Colorado, New Jersey, Washington, Texas, Illinois, and Nevada (the "AG Settlement") because it has entered into an agreement with the Attorney General of any state in a form or on terms that the Attorneys

General who are parties to the AG Settlement determine are more favorable than those contained in the AG Settlement with respect to MAP2R, then the Parties will prospectively amend Section VI(E) of this Agreement with respect to MAP2R to reflect any such terms or form of agreement in place of the terms set forth in Section VI(E) of this Agreement, and shall submit any such amendment to the Court for approval. The Defendants will give Lead Class Counsel notice of a request to change the terms of the AG Settlement within ten (10) business days of the Defendants' receipt of such request.

D.    **Execution by Counterparts**

This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures sent by email shall be deemed original signatures and shall be binding.

E.    **Notices**

All notices to the Parties or counsel required by this Agreement shall be made in writing and communicated by facsimile and email to the following:

If to Plaintiffs or Class Counsel:

Jeffrey K. Berns
JBerns@law111.com
ARBOGAST & BERNS LLP
6303 Owensmouth Avenue, 10th Floor
Woodland Hills, CA 91367
Facsimile: (818) 936-0232

If to Defendants or Defendants' Counsel:

T. Thomas Cottingham, III
tcottingham@winston.com
WINSTON & STRAWN LLP
214 N. Tryon Street
Charlotte, NC 28202

Facsimile: (704) 350-7800

~ and ~

Jack R. Nelson
jnelson@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Facsimile: (415) 391-8269

F.      Miscellaneous

        1.      This Agreement shall be binding upon and inure to the benefit of the heirs,

successors, assigns, executors, and legal representatives of all Parties.   Any action

seeking directly or indirectly to challenge, modify, construe, obtain relief from, extend,

limit, or enforce this Agreement shall be commenced and maintained only by the Court.

        2.      No opinion concerning the tax consequences, if any, of this Agreement as

to individual Settlement Class Members is being given by the Defendants or by

Defendants' Counsel, nor is any representation or warranty in this regard made by virtue

of this Agreement.   Settlement Class Members are directed to consult their own tax

advisors regarding the tax consequences of the Agreement, and any tax reporting

obligations they may have with respect thereto.   Each Settlement Class Member's tax

obligations, and the determination thereof, are the sole responsibility of the Settlement

Class Member, and it is understood that the tax consequences may vary depending on the

particular circumstances of each individual Settlement Class Member.   Nothing in this

Agreement is to be construed as tax advice of any kind.

        3.      Subject to Court approval, the Parties may agree to reasonable extensions

of time to carry out any of the provisions of this Agreement.

4.     The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application. All Parties agree that this Agreement was drafted by Class Counsel and Defendants' Counsel at arms' length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

5.     The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

6.     In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement.

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

By executing this Agreement, which consists of sixty-two (62) pages, including signature pages, the Parties signify their agreement to abide by and be bound by all the terms of this Agreement.

Signed on the dates below written:

ON BEHALF OF THE PLAINTIFFS:

_____     12/10/10
Jeffrey K. Berns, Attorney for the Plaintiffs          Date

ON BEHALF OF DEFENDANTS WORLD SAVINGS, INC.; WORLD SAVINGS BANK, FSB; WACHOVIA MORTGAGE, FSB, NOW KNOWN AS WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.; WACHOVIA CORPORATION; GOLDEN WEST FINANCIAL CORPORATION; WACHOVIA BANK, FSB, FORMERLY KNOWN AS WORLD SAVINGS BANK, FSB-TX; WACHOVIA MORTGAGE CORPORATION; WELLS FARGO HOME MORTGAGE; AND WELLS FARGO BANK, N.A.:

By: _____     12/10/2010
Terry Krapfl, Their Managing Counsel              Date

_____     12/10/2010
T. Thomas Cottingham, III, Attorney for the Defendants   Date